# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Northern Division

| | |
|---|---|
| **MICHAEL REININGER** | * |
| 1313 Maple Avenue | * |
| Arbutus, Maryland 21227 | * |
| | * |
| **JOHN MALINOWSKI** | * |
| 7028 Stratton Way | * |
| Baltimore, Maryland 21224 | * |
| | * |
| **DARRELL MINER** | * |
| 4305 Forsythia Lane | * |
| Pasadena, Maryland 21122 | * |
| | * |
| **DANIEL RAGAN** | * |
| 525 Aldino-Stepney Road | * |
| Aberdeen, Maryland 21001 | * |
| | * |
| | * |
| **Plaintiffs**, | * |
| v. | * |
| | * |
| | * |
| **ROLAND BUTLER** in his capacity of | * |
| SUPERINTENDENT, MARYLAND | *   **Civil Action No.:** 23-CV-1183 |
| STATE POLICE | * |
| 1201 Reisterstown Road | * |
| Pikesville, Maryland 21208 | * |
| | * |
| **FEDERAL BUREAU OF** | * |
| **INVESTIGATION NATIONAL** | * |
| **INSTANT CRIMINAL** | * |
| **BACKGROUND CHECK SYSTEM** | * |
| **SECTION** | * |
| 935 Pennsylvania Avenue, NW | * |
| Washington, D.C. 20535 | * |
| | * |
| **CHRISTOPHER WRAY** in his | * |
| official capacity as the Director of the | * |
| Federal Bureau of Investigation | * |
| 935 Pennsylvania Avenue, NW | * |

| | |
|---|---|
| Washington, D.C. 20535 | \* |
| | \* |
| **MERRICK GARLAND** in his | \* |
| official capacity as the United States | \* |
| Attorney General | \* |
| U.S. Department of Justice | \* |
| 950 Pennsylvania Avenue NW | \* |
| Washington DC 20530 | \* |
| | \* |
| **Defendants.** | \* |

\*    \*    \*    \*    \*    \*         \*    \*    \*    \*    \*    \*

# COMPLAINT

Plaintiffs, Michael Reininger, John Malinowski, Darrell Miner, and Daniel Ragen, by and through their attorneys, Roland S. Harris IV and COHEN|HARRIS LLC, bring this complaint pursuant to 5 U.S.C. §§ 701-706 and 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief against Defendants Maryland State Police (hereinafter MSP) and the Federal Bureau of Investigation (hereinafter FBI). In support of this Complaint, Plaintiffs allege as follows:

1. Maryland has revealed its purpose in granting expungement rights over five decades of statutory expansion and protective caselaw. Expungements remove state records, and therefore any official history of alleged or even proven criminal activity. Maryland wants its community members to be able to look forward and not be haunted by certain pasts, and for that reason any reliance on or use of those records carries significant penalties.

2. Nonetheless, the FBI has directed the MSP that Maryland's expungement laws are invalid under federal law to remove any federal firearm disqualification. Therefore,

if an applicant for a firearm related license, permit, or purchase in the State of Maryland has had a previous Maryland record expunged, that expunged record invalidates that person from exercising their Second Amendment rights under the United States Constitution even though 18 U.S.C. § 921(a)(20) allows people with expunged records to exercise such rights.

3. Under Maryland's Annotated Code, Criminal Procedure § 10-101(d), "'[e]xpunge' means to remove information from public inspection in accordance with this subtitle." Md. CP § 10-101(e) then presents a definition for the term "expungement" allowing three alternative routes of administration:

> "Expungement" with respect to a court record or a police record means removal from public inspection:
>
>> (1) by obliteration;
>>
>> (2) by removal to a separate secure area to which persons who do not have a legitimate reason for access are denied access; or
>>
>> (3) if access to a court record or police record can be obtained only by reference to another court record or police record, by the expungement of it or the part of it that provides access.

4. The Plaintiffs have all received expungements by obliteration under Md. CP § 10-101(e)(1), in that none of their orders of expungement are known to contain any language directing the various agencies subject to the court's expungement orders to store the records, nor make them inaccessible as stated in Md. CP § 10-101(e)(2) and (3) or their records have been destroyed completely by the courthouse relevant to their matters and their files do not exist for review in any manner whatsoever.

5. In addition, in the State of Maryland, expunged records may not be used to enhance sentencing in a criminal case, nor do they constitute predicate offenses for state laws that prohibit the possession of firearms by persons convicted of certain crimes.

6. In Maryland, the MSP is tasked with investigating applications for firearm related permits, licensing, and purchases. The MSP also serves as the point of contact for the Federal Bureau of Investigation in its role concerning the approval of firearm related permits, licensing, and purchases. (See Exhibit 1 – 1998 Letter to then Maryland Governor Parris Glendening from Louis Freeh, then FBI Director)

7. Sometime in 2022, MSP received a directive from the FBI that the FBI would no longer accept Maryland expungements and considered individuals with Maryland records that were expunged under Maryland law to be prohibited from possessing firearms under federal law. The exact timing of the original decree remains unclear to Plaintiffs but, on multiple occasions, MSP representatives have testified under oath as to the FBI's decree. MSP representatives have testified under oath that they are unable to approve firearm related applications for those with Maryland expungements, even though the applicant is approved under Maryland state law, due to the FBI's rejection of Maryland expungements and ultimately the federal prohibition on the Plaintiffs' possession of firearms.

8. On March 6, 2023, an email was sent from Joni Mayle, a Legal Administrative Specialist for the FBI's National Instant Criminal Background Check System (NICS) Section to Senior Trooper David Simmons of the MSP. The March 6, 2023 email officially stated the FBI's rejection of Maryland expungements for failure to

constitute a "total obliteration of the record" and further explained the FBI's position that "[i]f the information can be utilized for future proceedings or is stored in another location, this would not constitute a 'true expungement'" based on the FBI's interpretation of *Wyoming ex. Rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) and its application to Maryland expungement laws.  (See Exhibit 2 – March 6, 2023, Email from FBI to MSP)

9. The FBI's position is arbitrary and capricious because it ignores the complexity of Maryland's expungement laws which include an "obliteration" of the record under Md. PS § 10-101(e)(1).  Expungement law in Maryland is much different from the Wyoming expungement statute at issue. In *Crank*, the Wyoming statute specifically allowed law enforcement and prosecutors to utilize the records for sentence enhancement purposes. That feature does not exist under Maryland's expungement statutes.

10. The MSP acknowledges that the Plaintiffs meet all required Maryland state level criteria for approval regarding their respective firearm applications but due to MSP's complete abandonment of their role in the firearm related application process and operating merely as an extension of the FBI, and per its direction, the MSP will not approve the Plaintiffs' applications and pass them along to the FBI and ATF for federal review.  This process prevents the Plaintiffs from exercising their Second Amendment rights to acquire firearms and to obtain Maryland permits and licenses.

## Jurisdiction

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

## Venue

12. Venue lies in this Court pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted here occurred in the District of Maryland.

## Parties

13. Plaintiff, Michael Reininger was always and is a Maryland resident at all times relevant to this action.  Plaintiff Reininger is a 68-year-old father of two children, a grandfather of two grandchildren, and is employed as a contractor for a courier business.  Plaintiff Reininger received a Maryland expungement in 2000 for a Maryland misdemeanor record.  (See Exhibit 3 – September 22, 2000, The District Court of Maryland's Certificate of Compliance with the Order for Expungement of Records dated 7/27/00) On September 15, 2022, Plaintiff Reininger received a letter from the MSP denying his Application to Purchase a Regulated Firearm, the definition of which includes a handgun in the State of Maryland.  It was later learned that the denial was based on Plaintiff Reininger's Maryland record that had been previously expunged under Maryland law.  Plaintiff Reininger filed an appeal of the MSP's denial.  On December 9, 2022, Plaintiff Reininger's appeal was heard

at the Maryland Office of Administrative Hearings at a contested proceeding in which the MSP was represented by an attorney and the MSP presented testimony and exhibits. On December 16, 2022, the Maryland Office of Administrative Hearings (hereinafter OAH) issued a ruling reversing Plaintiff Reininger's denial after conducting a thorough analysis of *Crank*. (See Exhibit 4 – Ruling of the Maryland OAH in Michael Reininger's case)

14. Plaintiff, John Malinowski was always and is a Maryland resident at all times relevant to this action. Plaintiff Malinowski is a 53-year-old father of four children, grandfather to two grandchildren, and has been employed in the same trade since the age of 18. Plaintiff Malinowski received Maryland expungements in 2020 and 2021 for a Maryland misdemeanor record. (See Exhibit 5 – August 25, 2020 Order for Expungement, August 25, 2020 Certificate of Compliance – Expunged, September 25, 2020 Certificate of Compliance with the Order for Expungement, May 25, 2021 Order for Expungement and June 8, 2021 Expungement Certificate of Compliance) On September 16, 2022, Plaintiff Malinowski received a letter from the MSP denying his Handgun Qualification License Application based a Maryland record expunged under Maryland law. Under Maryland law, a person may not purchase a handgun unless that person has obtained a Handgun Qualification License pursuant to Md. PS § 5-117.1(a), (b). Plaintiff Malinowski appealed the MSP's denial and on January 25, 2023, his appeal was heard at the Maryland OAH in a contested hearing in which the MSP was present and presented testimony and exhibits. On April 13, 2023, the OAH issued a ruling reversing Plaintiff

Malinowski's denial after conducting a thorough analysis of Maryland's expungement law overall, as applied to Plaintiff and considering *Crank*.  (See Exhibit 6 – Ruling of the OAH in John Malinowski's case)

15. Plaintiff, Darrell Miner was always and is a Maryland resident at all times relevant to this action.  Plaintiff Miner is a 47-year-old father of two children, who served and received an honorable discharge from the United States Marine Corps in 2000 and is currently employed conducting building inspections which requires entering vacant properties alone.  Plaintiff Miner received a Maryland expungement in 2020 for a Maryland misdemeanor record.  (See Exhibit 7 – February 5, 2020 Order for Expungement of Records, February 10, 2020 Expungement Certificate of Compliance – Anne Arundel County Sheriff's Office, February 26, 2020 Expungement Certificate of Compliance – District Court of Maryland Anne Arundel County, June 3, 2020 Expungement Certificate of Compliance – Maryland Parole and Probation, June 3, 2020 Certificate of Compliance with Order for Expungement – Department of Public Safety and Correctional Services Division of Parole and Probation, September 7, 2021 Certificate of Compliance – Expunged from Department of Public Safety Information Technology and Communications Division and October 25, 2021 Expungement Certificate of Compliance Circuit Court of Maryland for Anne Arundel County) On October 26, 2022, Plaintiff Miner received a letter from the MSP stating that his Maryland Wear and Carry Permit, issued under Md. PS § 5-306, was revoked.  That letter states that the revocation was based on the Maryland misdemeanor record, the record that had been expunged

under Maryland law. Plaintiff Miner appealed the MSP's denial and on February 6, 2023, his appeal was heard at the Maryland OAH in a contested hearing in which the MSP was present and presented testimony and exhibits. As of this writing a ruling has not been issued by the Maryland Office of Administrative Hearings.

16. Plaintiff, Daniel Ragan was always and is a Maryland resident at all times relevant to this action. Plaintiff Ragan is a 65-year-old father of two children, a grandfather of seven grandchildren, and is currently employed in a field he has been in since 1979. Plaintiff Ragan received a Maryland expungement in 2018 for a Maryland misdemeanor record. (See Exhibit 8 – March 28, 2018 Certificate of Compliance with the Order for Expungement filed by the States Attorney for Harford County, April 3, 2018 Certificate of Compliance with the Order for Expungement filed by MSP, April 11, 2018 Certificate of Compliance with the Order for Expungement filed by the Department of Public Safety and Correctional Services Information Technology and Communications Division and the April 11, 2018 Certificate of Compliance with the Order for Expungement filed by the District Court of Maryland for Harford County) On January 11, 2023, Plaintiff Ragan received a letter from the MSP denying his Application to Purchase a Regulated Firearm, a handgun, based on Plaintiff Ragan being prohibited by federal or state law. On January 12, 2023, Plaintiff Ragan received a letter from the MSP stating that his Handgun Qualification License was revoked based on being prohibited under federal or state law. Both the denial and revocation are based on the Maryland

misdemeanor record expunged under Maryland law. Plaintiff Ragan filed an appeal as to both matters with the Maryland OAH that is currently set for May 16, 2023.

17. Defendant, Maryland State Police issues gun related permits and approves or denies purchase applications in Maryland. Specifically, "[a] person must submit a firearm application in accordance with [the Public Safety Article] before the person purchases, rents, or transfers a regulated firearm." Md. PS § 5-117. According to the Public Safety Article: "A person may purchase, rent, or receive a handgun only if the person ... possesses a valid handgun qualification license issued to the person by the Secretary in accordance with this section." Md. PS § 5-117.1. "'Secretary' means the Secretary of State Police or the Secretary's designee." Md. PS § 5-101. Therefore, and therein, the MSP has enacted many of the policies and practices discussed herein and continues to carry them out.

18. Defendant, Roland Butler is the Secretary and Superintendent of the MSP. Defendant Butler is directly responsible for executing and administering the State of Maryland's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs, and practices against Plaintiffs, and is in fact presently enforcing the challenged laws, customs, and practices against Plaintiffs. Defendant Butler is sued in his capacity as the official in charge of the MSP which oversees the issuance of gun permits and adopting policies and practices governing gun permits, licensing, and purchases.

19. Defendant, Federal Bureau of Investigation oversees the National Instant Criminal Background Check System (hereinafter NICS). NICS issued a directive to the MSP

for the MSP to not issue gun permits or approve purchases for people with expunged Maryland records.

20. Defendant, Christopher Wray is the Director of the Federal Bureau of Investigation (FBI). Defendant Wray oversees the Federal Bureau of Investigation National Instant Criminal Background Check System Section and its policies and practices. The FBI NICS issued a directive to the Maryland State Police for the Maryland State Police to not issue gun permits or approve purchases for people with expunged Maryland records.

21. Defendant, United States Attorney General Merrick Garland is the chief law enforcement officer for the United States and head of the Department of Justice, which oversees Defendant, FBI.

## Facts Common to all Causes of Action

22. Paragraphs 1 through 21 are incorporated as thoroughly stated herein.

23. Under 18 U.S.C. § 922(g)(1) it is unlawful for any person to exercise any rights regarding firearms if they have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.  Under 18 U.S.C. 921(a)(20), convictions for state level misdemeanor crimes are treated as disqualifying if the misdemeanor crime is punishable by more than two years.  Maryland law likewise imposes the same disqualification for such misdemeanor crimes punishable by more than two years.  Md. PS § 5-101(g)(3) (defining disqualifying crime). The expunged records of each of the Plaintiffs were for misdemeanor crimes.

24. Under 18 U.S.C. § 921(a)(20)(B) a conviction that has been expunged or set aside shall not be considered a conviction under 18 U.S.C. § 922(g)(1).

25. Under 18 USC 921(a)(20)(B) what constitutes a conviction shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.

26. Maryland's expungement laws are contained in Md. Annotated Code, Criminal Procedure Article (CP) §§ 10-101 and through 10-112.

27. Under Md. CP § 10-101(e)(1) expungement with respect to a court record or police record means removal from public inspection by obliteration.

28. Md. CP §§ 10-101(e)(2) and (3) provide two other alternative forms of expungement, besides the Md. CP § 10-101(e)(1) obliteration, whereby expunged records may be stored in a place where the records can not be accessed without a court order issued under Md. CP § 10-108(a).

29. Regardless of which of three forms of expungement are ordered, Maryland's expungement laws remove the effects of a conviction under Maryland law. Maryland does not use expunged records to enhance any sentence, to calculate sentencing guidelines, nor to constitute predicate offenses, nor are any existing records accessible to the public or law enforcement without a signed order from the court; and under Md. CP § 10-109 employers, educational institutions, and state officials are barred from asking applicants about expunged records in any licensing, permit, or registration process with a criminal penalty of up to a year in jail for any employer, educational institution, or state official that does so.

30. The provisions of Maryland's expungement laws can be compared to Md. CP §§ 10-301 and 302 through which criminal records may be shielded.  Under Md. CP § 10-301(e) to "shield" means to render court or police records inaccessible by members of the public. But shielded records remain accessible by specifically named parties, including but not limited to criminal justice units, for legitimate criminal justice purposes.  Md. CP § 10-302(b)

31. The March 6, 2023, email from Joni Mayle clearly states the final decision of the FBI and bars those with Maryland expungements from exercising their Second Amendment rights under the FBI's interpretation of federal law.

32. The FBI's blanket prohibition against considering Maryland expungements fails to recognize the distinctions between Maryland's expungement laws and those found in *Crank*.

**First Cause of Action**

**Violation of the 2nd Amendment of the United States Constitution**

**42 U.S.C. § 1983**

**Against Defendant Butler**

33. Paragraphs 1 through 32 are incorporated as thoroughly stated herein.  All the actions of Defendant Butler, as head of the Maryland State Police, are taken under the color of State law.

34. Each of the Plaintiffs are within the definition of "the people" found in the Second Amendment of the United States Constitution and entitled to its protections.

35. The Plaintiffs each received an expungement pursuant to Maryland law, Md. CP §§ 10-101 through 10-112, prior to the denial of their Second Amendment rights by the actions of the MSP.

36. Each of the Plaintiffs have had any convictions that would disqualify them from exercising their Second Amendment rights under federal law abrogated by an expungement that is sufficient under both Maryland and federal law.

37. By the MSP's adherence to the FBI's continuing rejection of Maryland's expungement laws, Defendant Butler violated the Plaintiffs' individual rights under the Second Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

38. Pursuant to 42 U.S.C. § 1983, Plaintiffs respectfully request that this Court declare that the MSP's actions in refusing to give full effect to Maryland expungement laws and concomitant actions denying applications or revoking licenses and permits to which the Plaintiffs are entitled to under Maryland law and under the Second Amendment violates Plaintiffs' Second Amendment rights and are thus unconstitutional.  This Court should issue a mandatory injunction against Defendant Butler requiring the MSP to issue permits and licenses and to accept applications for firearm purchases for those with expunged Maryland records, and not otherwise prohibited, notwithstanding the illegal and unconstitutional actions of the FBI challenged within.

39. Plaintiffs respectfully request costs and attorney's fees pursuant to 42 U.S.C. § 1988.

40. Plaintiffs respectfully request any other relief this Court deems just and appropriate.

## Second Cause of Action

## Violation of Administrative Procedures Act

## 5 U.S.C. § 706(2)(A)

## Against Defendant FBI and Defendants Garland and Wray

41. Paragraphs 1 through 40 are incorporated as thoroughly stated herein.

42. Under 5 U.S.C. § 706(2)(A), this Honorable Court shall set aside agency actions, findings, and/or conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

43. The Plaintiffs are eligible for relief under 5 U.S.C. § 706(2)(A) because they are personally aggrieved by the final decision of the FBI and are being denied their Second Amendment Constitutional rights as a result.

44. The FBI's policy regarding Maryland's expungement statutes, found in Md. CP §§ 10-101 through 10-112, is final as their March 6, 2023 email shows.

45. The FBI's policy of a blanket rejection of Maryland expungements disregards Maryland's expungement laws and their meaning and usage in the State of Maryland and is contrary to law.

46. Defendants' finding that Maryland's expungement laws found in Md. CP §§ 10-101 through 10-112 does not meet their definition of expungement is contrary to 18 U.S.C. § 921(a)(20) and therefore is arbitrary and capricious, an abuse of discretion, and is not in accordance with the law under 5 U.S.C. § 706(2)(A).

47. Plaintiffs respectfully request injunctive and declaratory relief against Defendant FBI.

48. Plaintiffs respectfully request that this Court declare that the FBI's refusal to recognize Maryland's expungement laws violates Plaintiffs' Second Amendment rights and is thus unconstitutional as applied to Plaintiffs and enjoin the FBI from refusing to give full force and effect to Maryland's expungement laws. This Court should further order the FBI to amend or change the NICS database to give full effect to Maryland's expungement laws as to Plaintiffs and similarly situated persons.

49. Plaintiffs respectfully request attorney's fees and costs under 28 U.S.C. § 2412(d).

50. Plaintiffs respectfully request any other relief this Court deems just and appropriate.

**Third Cause of Action**

**Violation of the Second Amendment of the United States Constitution**

**Against Defendants Garland and Wray**

51. Paragraphs 1 through 50 are incorporated as thoroughly stated herein.

52. Each of the Plaintiffs are within the definition of "the people" found in the Second Amendment of the United States Constitution and entitled to its protections.

53. The Plaintiffs each received an expungement pursuant to Maryland law, Md. CP §§ 10-101 through 10-112, prior to the denial of their Second Amendment rights by the actions and declarations of the FBI.

54. Each of the Plaintiffs have had any Maryland records that would disqualify them from exercising their Second Amendment rights under federal law abrogated by a Maryland expungement that is sufficient under 18 U.S.C. § 921(a)(20).

55. By the Defendant FBI's continuing rejection of Maryland's expungement laws, the Defendant FBI has adopted a practice and policy that violates the Plaintiffs' individual rights under the Second Amendment to the United States Constitution.

56. The unconstitutional actions of the FBI are subject to the direction and control of the Defendants, Garland and Wray, and the actions of the FBI, and Defendants Garland and Wray in failing to respect the expungement laws of Maryland are *ultra vires*.

57. Plaintiffs respectfully request that this Honorable Court grant declaratory and injunctive relief against the Defendants Garland and Wray under *Ex Parte Young*, 209 U.S. 123 (1908). This Court should declare that the FBI and Defendants Garland and Wray's refusal to recognize Maryland expungement laws with respect to Plaintiffs is unconstitutional under the Second Amendment and enjoin Defendants Garland and Wray from refusing to give full force and effect to Maryland's expungement laws. This Court should further order Defendants

Garland and Wray to issue such directions or orders necessary to amend or change the NICS database to give full effect to Maryland's expungement laws.

58. Plaintiffs respectfully request attorney's fees and costs under 28 U.S.C. § 2412(d).

59. Plaintiffs respectfully request any further relief as this Court deems just and appropriate.

## Fourth Cause of Action

### Declaratory Relief

### 28 U.S.C. § 2201-2202

### Against Defendant FBI and Defendants Garland and Wray

60. Paragraphs 1 through 59 are incorporated as thoroughly stated herein.

61. A reviewing court may declare the rights and other legal relations of any interested party seeking declaratory relief, regardless of whether further relief is or could be sought.  A reviewing court may also grant further necessary and proper relief based on a declaratory judgment or decree.

62. Plaintiffs are entitled to a declaration that Maryland's expungement laws, Md. CP §§ 10-101 through 10-112, remove a firearm disability and meet the federal definition of expungement under 18 U.S.C. § 921(a)(20) and *Crank*.

63. Plaintiffs are entitled to a declaration that the fact that they obtained an expungement of their prohibiting Maryland records under Maryland's expungement laws, Md. CP §§ 10-101 through 10-112, the Plaintiffs' Second Amendment rights

under the United States Constitution have been restored in accordance with federal law.

64. Plaintiffs are entitled to a declaration that the Defendants arbitrarily and capriciously concluded that Maryland's expungement laws, Md. CP §§ 10-101 through 10-112, do not qualify as an expungement under 18 U.S.C. § 921(a)(20).

65. Plaintiffs are entitled to a declaration that the Defendants exceeded their statutory jurisdiction and authority by concluding that Maryland's expungement laws, Md. CP §§ 10-101 through 10-112 does not meet the definition of expungement under 18 U.S.C. § 921(a)(20).

66. Plaintiffs are entitled to a declaration that the actions of the Defendants are contrary to Plaintiffs' constitutional rights.

67. Plaintiffs respectfully request attorney's fees and costs under 28 U.S.C. § 2412(d).

68. Plaintiffs respectfully request any further relief as this Court deems just and appropriate.

Respectfully Submitted,

Roland S. Harris IV, Esq.
COHEN|HARRIS LLC
40 York Road – 4th Floor
Towson, Maryland 21204
Ph. (888) 585-7979
Fx. (443) 773-0675
Roland@CohenHarris.com